E. L. WATROUS MFG. CO. v. AMERICAN HARDWARE MFG. CO.

(Circuit Court of Appeals. Seventh Circuit. January 5, 1910.)

No. 1,526.

PATENTS (§ 328*)—INFRINGEMENT—DOOR CHECK AND CLOSER.

   The Bailey patent, No. 652,828, for a door check and closer, as limited by its terms to meet the requirements of the Patent Office, in view of the prior art, *held* not infringed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Suit in equity by the E. L. Watrous Manufacturing Company against the American Hardware Manufacturing Company. Decree for defendant (161 Fed. 362), and complainant appeals. Affirmed.

The bill in the court below was to restrain the infringement of letters patent No. 652,828, issued to Herbert L. Bailey, July 3, 1900, for an improvement in door checks and closers. Upon hearing, the bill was dismissed for want of equity. The facts are stated in the opinion.

Wallace R. Lane, for appellant.

Henry L. Clapp, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge.    Appellant's patent is illustrated in the following diagram:

The operation of the device patented is clearly described in the descriptive portion of the patent, especially when read in connection with Fig. 4 of the diagram, as follows:

"Referring by letter to the accompanying drawings, A indicates the doorframe; B, a pin or projection depending from the top of the frame; C, the door; D, a bracket secured to the inner side of the door near the top thereof, and E a bifurcated jaw pivoted to the bracket and adapted and arranged to engage the pin B upon the door-frame when the door is closed.    The pivoted bifurcated

176 F.—7

jaw is provided with an angular tailpiece or projection F, adapted and arranged to engage a shoulder G upon the bracket when the jaw is swung out, or extending in position to engage the pin on the door as the door swings to. A spiral spring H is secured at its ends, respectively, to the bracket and to the jaw at such points as that it shall swing across the dead-center formed by its two points of attachment and the pivot connecting the jaw to the bracket, so that when the jaw is open—that is, swung out in the position shown in Fig. 3—the contractile force of the spring tends to yieldingly maintain the jaw in such position. When, however, the jaw is forcibly swung upon its pivot, as by engagement therewith of the pin B, as soon as the jaw has swung sufficiently for the spring to pass the dead-center the contractile force thereof will tend to draw the jaw inward to the position illustrated in Fig. 2. This tendency of the spring causes the device to forcibly close the door after the door has been checked by the engagement of the jaw with the pin B, the checking force resulting from force necessary to swing the spring across the dead-center. Of course when the door is forcibly drawn open the jaw will be caused to swing out again in the opposite direction, and the shape of the notch therein and the location of the pin B are such that at the time the jaw becomes disengaged from the pin the jaw will have been swung outward on its pivot until the spring H has passed the dead-center, when the parts will be retained in this position until the door is again closed."

The functions of the device are to use the spring, first, as a buffer, to resist the strength of the slam of the door, and secondly, as a means to pull the door shut, and to hold it shut—these functions being brought about in succession by the arrangement of the spring and the frog, whereby, due to the angle of the frog, the pressure of the spring is exerted against the forcible closing of the door until the dead center has been passed, but the dead center passed, the tension of the spring is exerted toward drawing the door shut and holding it shut.

Bailey's claim, as originally filed and as subsequently allowed (the interlineations and the erasures indicating the changes in the claim as originally applied for, and showing it as finally allowed), is as follows:

"In a door check and closer, the combination with a bracket secured to the near the upper edge thereof                    depending from the top of the door frame door ∧ and a pin or projection ~~on the door frame adjacent thereto~~ ∧, of a bifurcated jaw pivoted to the bracket and adapted and arranged to engage said pin, a spring secured at its ends, respectively, to said jaw and bracket so as to swing across the dead center when the jaw is swung upon its pivot and a stop for said jaw, substantially as described."

The original claim being disallowed on the following citations:

"Becker, #354,087, Dec. 14, 1886, Door Checks and Closers, and Mallory, #512,202. Jany. 2, 1894, 'Door Checks-Trippers' and German patent to Hoing, #86,732, Door Checks. The most that applicant has done is to add the spring of Mallory to the device of Hoing."

Thereupon the amendments were made, as indicated in the insertions and erasures.

An inspection of these patents, and of the patent of Conklin, No. 589,418, and the English patent of Schou, No. 10,955, convinces us that the claim, as thus filed, was too broad—Mallory, Conklin and Schou clearly embodying the functions and the arrangement of angle and frog, whereby, upon the passing of the dead center, the line of draft is changed, as above set forth. The mechanical adjustments, only, are somewhat different, and by amending the claim upon these citations, Bailey has limited himself to the mechanical respects in which his device differs from the preceding devices.

Considering the Bailey patent, therefore, as a limited one, the Wells device, patent No. 770,837, does not answer to the call of his claim. True, it reaches the same result, and through the performance by the device of the same functions, but in this larger respect it follows only the prior art. It does not use a bracket secured to the door "near the upper edge thereof" (and this is one of the amendments that saved the Bailey patent in the Patent Office from citations of the prior art); nor is "a pin or projection depending from the top of the door frame" employed to engage with the jaw—another amendment that saved the Bailey patent in the Patent Office from the prior art. The Bailey patent, in terms being so limited—and made so to meet the requirements of the Patent Office—we are not at liberty to enlarge or alter it.

The decree of the Circuit Court is affirmed.